The Honorable Judges of the United States Court of Appeals are standing before the Southern Judicial Circuit. Hear ye! Hear ye! Hear ye! All persons having visited before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, everyone. We are pleased to have you here. And we are delighted to start our work today with case number one. This is a consolidated appeal. Appeal number 23-3159, 23-3175, 23-3340, 23-3363, and 23-3385 Elkins v. Southeastern Indiana Health Management. We welcome to the podium Mr. Carney. Thank you, Judge. Good morning, Your Honors. Good morning. May it please the Court. I am David Carney. I'm here on behalf of all the consolidated appellants. I represented Sarah Bush Lincoln below. And for better or worse, they've all got me this morning. So I this is actually the third time I've done this. So I'm somewhat uniquely positioned in that respect, if no other. And having been through this, I wanted to start the argument this morning just by kind of level setting on why we're here and why we think these cases are removable. And obviously that starts with the complaints. The complaints are very similar, all five of them. I picked Goshen as the one representative at. Example, it's app 292. I'm going to start with app 296 at paragraph 8. A pixel, also referred to a tracker or a tracking technology, is a snippet of code embedded into a website that tracks information about its visitors and their website interactions. When a person visits a website with an embedded pixel, the pixel tracks events, such as pages views, buttons clicked, and information submitted. 47, then app 304, talking about button click data, includes any buttons clicked by site visitors, the labels of those buttons, and any pages as viewed as a result of the button links. And so the substance of the complaints is that those disclosures of those buttoned clicks are privacy violations under Illinois or Indiana state law. And paragraph 161 of Goshen says it, app 328, defendant's disclosure and the substance of the nature of those communications is an intentional intrusion upon plaintiff's solitude or exclusion in their private affairs. And that's where we think this case is removable because one of those buttons, and it's an important button, the patient portal login button, was something that the federal government asked us to put on our websites and that we assisted the federal government in putting on the website. So on the one hand, we have the federal government saying give patients, give patients and their caretakers immediate access to their healthcare information online. This is what we want you to do. We want you to give your patients the ability to click on that button. Do the federal government ask you all to put the pixels there? They did not, Your Honor. And I think that's, I'd point the court to Baker on that, this court's opinion in Baker. The companies did not need, and this is 962 F3rd at 944 to 945, the companies did not need to allege that the complaint of conduct itself was at the behest of the federal agency. It is sufficient for the acting under inquiry that the allegations are directed at the relationship between the companies and the federal government. Is it difficult to allege such a relationship between the pixels and the federal government when we have the federal government saying there's a problem with these pixels, there may be a HIPAA violation, we don't encourage the use of these pixels. We see that in the record as well. I think that's correct, Your Honor. That was December 1st, 2022, and I think that was the first time that the federal government had said we see a problem with this. And I think subsequently what we've seen is companies taking action and health care providers taking action to now deal with that regulation. But until that, that was the initial guidance on the tracking technology on December 1st, 2022. So we're all dealing with that, but until that time there wasn't any guidance on this. And so that goes back to what I think really was kind of this collaboration, and it's still a collaboration up to this time, between health care providers and the federal government. I guess, Mr. Carney, you use the term collaboration. Some people might use the term requirement, mandate, regulation. What's the rule that you would like us to articulate with regard to when a regulated industry or such as the health care industry that is regulated by the government and mandated to do certain things, when does that relationship cross the line between a regulated industry like Martin and something that brings us closer to the defense contractors that are making parts for F-15s for the military to use? I think we can all agree that that's one end of the extreme, right? Martin kind of provides us with a regulated industry. And so what is the rule that you would have us propose as to where to draw that line in between those extremes? I think the rule starts, Your Honor, from my perspective with Watson and the touchstone of Watson being assistance, that what you're doing is assisting the federal government in accomplishing a federal mission. But all regulations are designed to further some sort of government goal and policy, or else there wouldn't be regulations, right? So, for example, the reason why the government regulates car emissions is because there's a federal policy that they want to further clean air, right? So if a regulation is not supported by some policy, then it would be arbitrary and capricious, and therefore it would be stricken down, right? And so the very fact that there's a policy doesn't get you there. And so what gets you there in this case? In this case, and I think to build on the answer, 551 U.S. Watson, basic – the assistance that private contractors provide, federal office goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks. Is this a basic governmental task, counsel? It is, Your Honor. I think it has – there's no question, Judge, I agree. It has a little bit of a know-it-I-know-it-when-I-see-it feel to it. You know, the cases, I think, have to be decided on their facts. To me, I look at this case and I say this should be in federal court, and it starts with this isn't compliance with the law. This is – at APT 706, this is a federal health IT vision and mission, a health system that uses information to empower individuals, mission to improve health and health care for all Americans through the use of information and technology. The complaints are all about the health systems, your clients' public-facing websites, and as you reminded us this morning, only one of the buttons is the button that leads to the patient portal, okay? So how are these public-facing websites, where most of the pixels are located that are complained about in this case, assisting the federal government in any function? The health systems would have had these websites regardless. It's good business to have a website for your massive health system. And I think, Your Honor, I don't disagree with that except in that we had websites before Meaningful Use. We would have websites absent of Meaningful Use. The one thing under Baker, again, is the 28 U.S. 1442A1 creates kind of a species of supplemental subject matter jurisdiction. If one piece of the complaint is sufficient to justify removal, one claim is sufficient to justify removal, any piece, that provides jurisdiction, federal jurisdiction over the whole complaint. So I think there – I don't disagree with the premise of Your Honor's question. I think, you know, that the websites, the public websites are not what brings us into federal court. It's that patient portal link that brings us into federal court. But that aspect of the complaint under Baker and under – is sufficient on its own to justify removal of the whole thing. Mr. Carney, is there a case you can point to where the court has found arising under removal jurisdiction where, in the end, the government did not ultimately own the end product? That is, here, I'm sure your clients would agree that the government doesn't own your websites and the government just can't come and take your portals. And so the benefit of the portals in yours to – right? Your client possesses the property right to those portals. Is there ever a case that you can point us to where a court has found arising under jurisdiction in that context where the government didn't, in the end, own what was produced? You know, Your Honor, I'm thinking of the Rural Electric Administration, REA cases, Kaver, Butler, where, you know, the federal government designed a program where – to provide rural electricity. And, you know, at the end of the day, the complaints were over distributions that were being made allegedly in violation of state law. So I don't think the government owned, you know, the rural electric cooperatives in those cases, but the rural electric cooperatives were assisting the federal government in providing and accomplishing a federal mission of providing rural electricity to those areas. So those are the – those are one case that I would cite there. The one final – I think I'm at – I just want to end real quick before I get – I know I'm kind of into my rebuttal time, but I think on the, you know, the basic kind of this was a governmental task. To me, you will have better – this is AB 792, how to optimize patient portals for patient engagement. You will have better success meeting meaningful use requirements for Stage 2 if you integrate a patient portal effectively in your practice operations. The 10-year – 2014 10-year health information from care delivery systems should be easily accessible to individuals and empower them to become more active partners. This is AB 527, the 2022 plan. In today's digital world, patients' right to control their health must include the right to access and control their health information. So this whole record that we've established from my perspective about individual access to online information being a key component of this I think is what kind of draws that line from – kind of crosses that Watson threshold wherever it lies. So I'll save the rest for rebuttal. Thank you. Thank you, Mr. Carney. Mr. Sokoloff, am I pronouncing that correctly? That's right. Okay. Can you move that clock to the left if I can? Of course. Thank you. Thank you, Your Honor. May it please the Court, Eugene Sokoloff for the appellees in each of the consolidated appeals. I'd like to make sure that I'm useful to you this morning if I can be. I'd like to start with three quick points and then just get to some of the questions that you all have been asking my friend on the other side. The defendants here point out that the question is whether a private actor is assisting the federal government. And I think the critical question that we're missing the answer to here is assisting with what? The Third, Fifth, and Eighth Circuits had no trouble concluding that building a website for a private hospital is not one of those things. I think, Judge Lee, to your question about whether the government owns the product on the back end, I don't think ownership is necessarily strictly required. But the CABER and the other rural power cases, even though the government didn't own the end product, those were deemed instrumentalities of the federal government. So you're talking about a much more closely related end product, one that is, if not owned by the government, at least deemed to be an instrumentality. The second point I want to turn to is the question of a limiting principle. And I think, again, this is something that came out in some of the questions to my friend. I don't see a limiting principle. I didn't hear one this morning, and I didn't read one in the briefs that would allow removal in this case, but would forbid it for claims against doctors who take Medicaid, farmers who take crop subsidies, or university researchers who get NIH grants. To me, there is no way that you can allow removal under these circumstances and not allow it in those circumstances, which I think is something that Martin, that Baker, and any number of other cases say is not possible. Finally, I want to address something my friend said about what brings the parties to federal court. What brings the parties to federal court today is not the button that allows a patient to access their medical records. Nobody has a problem with that. The plaintiffs are not complaining about being able to access their records. What brings them to court and what the complaints allege is what the defendants did with the information that someone was clicking on those buttons, what the defendants did with the information that patients were entering into the websites when they were interacting with them, when they searched a health condition, when they visited certain webpages. That was being linked to their Facebook accounts, for example, so that advertisements could be targeted to them. It's that privacy violation, which is a commercial activity that the defendants carry on for their own benefit that is at issue here. Speaking of that, the complaint alleges that the medical providers here violated HIPAA. Does that mean that the cases turn on a federal defense, a federal issue? That's one of the factors we have to look at. It does not mean that, and there are a few reasons. First of all, I think Mesa nicely sums up the two ways in which something can be a federal defense for 1442 purposes. One way is if it supplies a federal immunity, and obviously they're not arguing that HIPAA provides a federal immunity. The other way is if the substantive claim is based on a federal law duty, and the defendant argues that there is no such duty under the statute. None of these claims arise out of a federal duty. They are all state law claims, either consumer protection claims under state statutes or state tort claims. Now, a state tort claim can take as part of what informs a standard of care a federal statute, and I think if you look at the complaints, they allege violations both of the HIPAA standards, but also of industry standards and of the patient's own expectations of privacy. Nothing will ultimately turn on whether HIPAA imposes a particular requirement. It will be a question of state law. Thank you. Counsel, on page 35 of the appellant's brief, there's an assertion that BJC Health, of course not binding on us, did not analyze the particular claims at issue here, and there's been some talk today about the claims and the record. Do you see any distinguishing factors that are outcome determinative for any of the circuits that have weighed in on this? I don't. I think that the only factor that the defendants had identified in BJC Health was the question of whether the allegations centered on the plaintiff's interactions with the portal as opposed to the rest of the website, and as our 28-J letter we filed last week shows, the Eighth Circuit has now confirmed that that makes no difference. So they've now heard that argument and found that it makes no distinction. And I think that what I understood the defendants to be saying about those other cases is that they did not analyze in their decisions the various federal tips and tricks that they cite or guidelines that they cite, but I think they didn't analyze them because they make no difference. They just can't move the needle in a case like this where there is no indication that you have anything beyond simple compliance with regulations. And Judge Lee, as you pointed out, Martin is really the gold standard on that, and it shows that even where a regulation is very important to – can be a life or death situation, as it was in Martin, because these were regulations that covered dealing with COVID in nursing homes, and even when reimbursement from Medicare and Medicaid is on the line, that is not enough to turn private entities, private conduct into official conduct. If there are no further questions, thank you very much. Thank you. Mr. Carney? Thank you, Your Honors. The one thing just – I can say just from Sarah Bush Lincoln, there is a negligence per se claim in there based on HIPAA, where the duty does arise from HIPAA. To Your Honors' question, it's paragraph 159, ab 649, pursuant to the laws set forth herein, including HIPAA and the HIPAA privacy rule and security rule. That is the basis for the violation. The one thing I want to say, and obviously we're not treading new ground here by any means with BJC and LCMC and more. I'm not trying to run away from that in any way. I do think the flaw that I see most in those opinions and we see most in those opinions is the idea that there was high tech and there was a voluntary incentive program under high tech. And then that was kind of the end of the analysis. It was like everything that came after that isn't analyzed in the opinion. And that's where I think going back to – So counsel, are you saying they're factually different or are you asking us to depart from them? I think – I don't think they're factually different, Your Honor. I'm not sure the court has to depart from them to reach a different result. You can just say we're going to analyze the record. We're going to analyze what happened from 2011 forward. We're not going to stop with high tech. We're going to look at the entire factual picture of collaboration and assistance and under Watson. And to us, that adds up to a different result. Again, I don't mean to go back to kind of this whole notion, but that's where I think they got them wrong. And looking at the 2011-2015 strategic plan, where this all starts, only 7% of Americans have used a website to access their health information online. The single biggest lever to individual empowerment is access to data. And this is AB 423, AB 427. The Federal Health IT Task Force has recognized individual access to data as a primary objective. And this is where we did what the federal government asked us to do. And that's where I think 28 U.S.C. 1442A1 is that we have your back statute. You do something for us. Collect customs in 1815, enforce the revenue laws in South Carolina in 1833. You do something for us. And obviously times have changed. We have your back. We'll give you a federal forum when what you did for us is challenged under state law. And that's what I think we have here. All right. Thank you. Thank you, Your Honors. We will take the case under advisement.